```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec. 7, 2011
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
FINANCEWARE, INC., d/b/a WEALTHCARE :
CAPITAL MANGEMENT and WEALTHCARE    :
CAPITAL MANAGEMENT IP, LLC,         :
                                    :
                    Plaintiffs,     :    No. 11 Civ. 5503 (JFK)
                                    :    **Memorandum**
      -against-                     :    **Opinion and Order**
                                    :
UBS FINANCIAL SERVICES,             :
                                    :
                    Defendant.      :
------------------------------------X

**JOHN F. KEENAN, United States District Judge:**

   Before the Court is PIETech Inc.'s ("PIETech") motion to intervene in this patent infringement action. The instant motion addresses four issues: (1) the scope of intervention of the third party, PIETech; (2) discovery deadlines; (3) the timing for claim construction; and (4) the timing for addressing Defendant's counterclaim of unpatentability.

### I. Background

   The following facts are taken from the Complaint, unless otherwise noted. On July 27, 2010, Financeware, Inc. d/b/a Wealthcare Capital Management and Wealthcare Capital Management IP ("Wealthcare" or "Plaintiff"), obtained a patent from the United States Patent and Trademark Office for a "Method and System for Financial Advising" ('138 Patent). On August 2, 2010, Wealthcare obtained a second patent for another system by the same name ('675 patent).

According to Wealthcare, UBS Financial Services ("UBS" or "Defendant") has been infringing on the above-described patents to provide financial planning advice to its clients.  Wealthcare alleges that UBS uses a software program called MoneyGuidePro to implement the two patented inventions.  As a result, Wealthcare asserts, the financial planning advice and reports created by UBS are derived from systems that were patented by Wealthcare.

Wealthcare seeks a permanent injunction and an award of damages.  UBS denies the allegations and has asserted counterclaims for declaratory judgment that Wealthcare's patents are invalid or, alternatively, that it has not infringed on the patents (Am. Ans. ¶¶ 1-20).

PIETech manufactures, distributes, and sells MoneyGuidePro (Def. and PIETech Mem. at 3).  It has indemnified Defendant UBS against liabilities, claims, damages, and legal costs – the two parties also share the same counsel.  PIETech has moved to intervene as a matter of right under Rule 24(a)(2) or permissively pursuant to Rule 24(b)(1)(B) (Id. at 4).  Wealthcare does not oppose PIETech's intervention, but requests that the Court limit the scope of PIETech intervention to include only the UBS software (Pl. Mem. at 1).

Additionally, UBS and PIETech have urged that discovery should be closed on September 21, 2012 (Def. and PIETech Mem. at 8).  Wealthcare opposes this date only if PIETech's intervention

is limited, in which case Wealthcare requests a discovery deadline of April 9, 2012 (Pl. Mem. at 2-3).

The parties also disagree on the timing of a Markman Hearing, pursuant to Markman v. Westview Instruments, 517 U.S. 370 (1996). UBS and PIETech request that the Hearing be held in the middle of the case. Under this proposed plan, claim construction issues would be fully briefed by June 8, 2012, with the Hearing shortly thereafter (Def. and PIETech Mem. at 9). Wealthcare requests that the Hearing take place at the end of the case (in conjunction with summary judgment motions) (Pl. Mem. at 3).

Finally, the parties disagree about the timing for resolving UBS's counterclaim that Wealthcare's patents are invalid. UBS and PIETech assert that the claim should be decided immediately after the Markman Hearing (Def. and PIETech Mem. at 9). To that end, it has proposed separate, expedited expert discovery on the issue of patentability (Id. at 10). Wealthcare opposes this schedule, submitting that patentability should be addressed over the normal course of litigation (Pl. Mem. at 4).

## II. Discussion

The instant motion involves matters that lie within the Court's discretion. The parties agree that PIETech's intervention is procedurally proper, so the single issue is

whether to limit the intervention, which the Supreme Court has deemed a matter for district courts to decide. See Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 378 (1987) (holding that courts may impose limitations on any intervention, permissive or as of right); Chevron Corp. v. Donziber, No. 11 Civ. 0691, 2011 WL 2150450, at *5 (S.D.N.Y. May 31, 2011). Additionally, scheduling a claim construction hearing, setting deadlines for discovery, and deciding when to determine the validity of a patent are all issues for the court to determine on a case by case basis. Westvaco Corp. v. Viva Magnetics Ltd., No. 00 Civ. 9399, 2002 WL 31052870, at *2 (S.D.N.Y. Sept. 13, 2002).

### A. Scope of PIETech's Intervention

Plaintiff argues that limiting PIETech's intervention to include only Defendant's use of MoneyGuidePro is more efficient and also prevents an expansive and cumbersome litigation, which it had not contemplated upon filing its Complaint. In opposing limitations on its intervention, PIETech asserts that Plaintiff will file successive identical lawsuits against each of PIETech's other customers in order to rehash the issues in every case. PIETech further submits that "[d]iscovery from PIETech and one of its customers, or from PIETech and all of its customers, will be largely the same and will come from PIETech."

4

On parties' consent, the Court grants PIETech's motion to intervene, but limits this intervention to include only UBS's use of PIETEch's software, in accordance with Plaintiff's proposal.  The Court finds that this course of action has three primary advantages:  it is efficient, it affords Plaintiff the opportunity to advance the case as it had contemplated, and it may decide issues and claims that will have preclusive effect in future litigation, should Plaintiff decide to bring claims against PIETech's other customers.

First, limiting PITEch's intervention ensures that this litigation will proceed efficiently, and avoid cumbersome litigation.  As Plaintiff noted at oral argument, only an entity can infringe.  As a result, under PIETech's proposed intervention plan, information about each of PIETech's customers' use of MoneyGuidePro would be necessary.  Therefore, while PIETech holds much of the information that would be sought during Discovery, it is likely that the rest of PIETech's customers will also be subjected to discovery requests. Limiting the intervention will ensure that discovery, coming from UBS and PIETech, is manageable.

Next, permitting unlimited intervention would force Plaintiff into litigation it had not anticipated.  Plaintiff brought this case seeking relief from alleged infringement by UBS's use of MoneyGuidePro.  Upon filing the case, it did not

5

intend to enter into extensive litigation involving every instance where MoneyGuidePro is used.  Failing to limit this intervention would force Plaintiff to expand its claim for relief and drastically change its contemplated course of litigation.

Finally, contrary to Defendant's assertion, claim or issue preclusion will be available to the parties following UBS-specific litigation.  Certainly a determination that Plaintiff's patents are invalid would be preclusive, immediately estopping Plaintiff from pursuing additional litigation.  Alternatively, if it is determined that Platiniff's patents are valid, PIETech would be estopped from asserting unpatentability claims in future proceedings.

If, as PIETech claims, all PIETech's customers use identical versions of MoneyGuidePro, findings as to infringement may also have preclusive effect.  Indeed, a determination that Plaintiff's use of MoneyGuidePro is infringing could preclude future litigation on the issue.  As a result, damages would be the only remaining question in future litigation involving PIETech's other customers.  Similarly, if it is determined that Defendant did not infringe, Plaintiff would be estopped from contesting the underlying findings in subsequent litigation.

### B. Discovery Deadline

As the Court has limited PIETech's intervention to only UBS-related infringement, it will now address the deadline for discovery.  Because of the volume of claims in this case, the Court determines that September 21, 2012 is a more realistic deadline for discovery.  The summary judgment phase will subsume claim construction issues, patentability issues, as well as the issue of infringement.  As such, the parties will be exchanging an abundance of information and the Court therefore declines to truncate the Discovery period as Plaintiff requests.

### C. Claim Construction

In a claim construction hearing, or Markman Hearing, the court interprets the meaning of the patent at issue through examining evidence on the appropriate meanings of relevant key words used in the patent claim. Ballard Med. Prods. v. Allegiance Healthcare Corp., 268 F.3d 1352, 1358 (Fed. Cir. 2001); Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd., No. 02 Civ. 2605, 2002 WL 1808419, at *11 (S.D.N.Y. Aug. 7, 2002). There is no mandatory rubric for scheduling the Markman Hearing; courts set the schedule on a case by case basis, usually opting to hold the hearing either during discovery or at the summary judgment phase.  The Manual for Complex Litigation suggests conducting the Hearing at the summary judgment stage. Manual for Complex Litigation 4th § 33.25 ("[c]onstruing claims at the

7

close of discovery is advisable if the parties have all relevant and necessary information to articulate the issues or terms in dispute; parties must also be able to provide the court with a full factual background within which to construe the claim."). Still, several District Courts have held claim construction during Discovery. Plaintiff has requested claim construction in conjunction with summary judgment, while Defendant and PIETech want the Hearing to be held in the middle of the case.

The Court will follow the Manual for Complex Litigation and elects to hold the <u>Markman</u> Hearing at the summary judgment stage. At the summary judgment phase of the litigation, the parties will have acquired a full understanding of the issues and terms in dispute and will be well-equipped to articulate their positions. In turn, the Court will be presented with a comprehensive factual background and focused arguments, facilitating informed and efficient claim construction. Defendant's proposal would punctuate the discovery process with the <u>Markman</u> Hearing, depriving both the Court and the parties of information that could inform claim construction. Moreover, in the event that both expert and fact discovery is necessary to undertake claim construction, Defendant's proposal would incentivize the parties to conduct inefficient tiered expert discovery, in which experts are deposed twice, once on the issue of claim construction and again on the issue of infringement.

8

### D. Scheduling Plaintiff's Unpatentability Claim

Defendant states that the most efficient time to evaluate its counterclaim regarding validity is immediately after claim construction.  To that end, Defendant suggests a separate schedule for briefing the unpatentability counterclaim.  Defendant argues that recent jurisprudence and legislation suggest that business method patents – such as the patents at issue in this case – are inherently suspect.  Specifically, Defendant has identified the America Invents Act, H.R. 1249, 112th Cong. (enacted Sept. 2011), Bilski v. Kappos, 130 S. Ct. 3218 (2010), and subsequent Federal Circuit cases, all of which "call into question" the patentability of business methods.  Therefore, Defendant asserts, it is likely to be successful in its unpatentability claim and should have the opportunity to assert it early in the litigation.

The Court declines to permit Defendant to assert its unpatentability counterclaim in the middle of the case, for many reasons.  First, separate discovery on the issue of unpatentability is unnecessary and duplicative.  Similarly, two summary judgment phases (one on patentability, one on infringement) injects confusion and inefficiency into the case.  Finally, even if issues related to the patent and its validity are especially ripe, permitting the counterclaim to proceed on a different schedule than the rest of the litigation is

inappropriate.  The likelihood that Plaintiff's patent will be invalidated should not preclude the parties from exploring all relevant issues before any motion for summary judgment.

### III. Conclusion

For the foregoing reasons, PIETech's motion to intervene is granted, with limitations.  The discovery deadline is September 21, 2012, and claim construction and unpatentability will be addressed at the summary judgment phase.

**SO ORDERED.**

**Dated:**   **New York, New York**
           **December 6, 2011**

```
                                    _____
                                           John F. Keenan
                                      United States District Judge
```